UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| VIRGIE LEE VALLEY, et al. | CIVIL ACTION NO. 65-10946-A |
| -vs- | JUDGE DRELL |
| RAPIDES PARISH SCHOOL BOARD | MAGISTRATE JUDGE KIRK |

RULING AND JUDGMENT

This matter comes before the Court on defendant Rapides Parish School Board's "Unopposed Motion for Declaration of Unitary Status, Dissolution of All Remaining Outstanding Injunctions and Orders and Relinquishment of Judicial Supervision" (Document No. 517). Indeed, the motion is going to be granted and, under those circumstances, this day, September 28, 2006, is indeed a great day for Rapides Parish because it marks the end of a forty-one year era of supervision for the parish school system by this Court. I say forty-one years because, by anyone's measure, that is an entire generation. My clerk was not even born when this suit began. Several participants in this action, notably the original counsel, Louis Berry, who passionately pursued this case, and the first presiding judge, Nauman Scott, have both passed on. I did not even live in Alexandria when the suit commenced. The record is voluminous, consisting to date of 517 docket

entries. I remember reading this case early in my legal career and Judge Scott's original opinion in the case as precedential argument, but the record cannot reflect in any way the thousands of hours, conflict, resolution, debate, caring, concern, sweat and tears and all the rest that have been engendered by this suit.

I like to hope we lived in a different time when this suit was filed. The suit was filed seeking something we all seek and something hard to define – justice. The suit sought to achieve what our founders sought also – justice for all people. Those who brought the suit, as well as the defendants, knew the trek would not be easy.

An application to the Court for full unitary status is, therefore, a remarkable milestone in desegregation litigation. For an application to be granted does not mean that the matter of racial justice and equal education is solved. It does not mean that decisions regarding education and what a system should look like in the best of all worlds will necessarily come easily. But what it does represent is a kind of crossing over. The process reminds me of a little prayer I have heard: "Lord, I ain't what I ought to be yet, but thank you that I ain't what I was."

Unitary status for a school system is not merely a recognition of a school system's having mechanically complied with court orders or earning entitlement to relief from judicial supervision, but rather it is about recognition of a change in minds and hearts, about the nature of education for all people, and the discovery

of the great joy in seeing our children of all races grow and achieve in an atmosphere of quiet learning.

In this case, it is significant that the process of achievement has taken a very long time. The last consent decree in this case both recognized the progress made to that point and pointed the way to final recognition of unitary status today. Notably, the Court recognized unitary status in Rapides Parish schools first in the areas of transportation and extra-curricular activities in the year 2000. Next was relinquishment in the area of administrative assignments in 2002. Then, we saw facilities being declared unitary in the year 2003, and, in the areas of administrative, faculty, and staff assignments and that of resource allocations earlier this year. Significantly, each of those steps was approved by the Court without opposition. In this, I also must recognize the role of my predecessor in this office, F. A. Little, Jr., who had supervision of this case for more than twenty years. Now, I dare say that today would not have arrived but for his oversight as well. So, this ruling is shared with him.

Indeed, the role of the federal court in desegregation cases has been long defined by the Supreme Court and the circuit courts of appeals. In short, our function is (1) to dismantle, root and branch, the vestiges of the previously operated segregated dual school system with all deliberate speed; (2) to eliminate *de jure* segregation and the vestiges of that segregation to the extent practicable; and finally, (3) to further the return of the school system to local control.

Upon finding that a previously segregated school system has been dismantled and is thus constitutional, the district court presiding over the case is to declare the school system unitary and is to dismiss the case. In considering unitary status, the Court considers certain jurisprudentially defined factors known as "*Green* factors." Some of these are the same factors already considered which I mentioned previously and which have resulted in previous partial unitary declarations. These factors, as observed by the Supreme Court, are the most important indicia of a racially segregated school system.

Before, I mentioned that this latest motion asks for unitary status in the remaining area – student assignments and non-faculty assignment provisions relating to the quality of the educational experience. I have reviewed the evidence submitted in support of the position, and, in that regard, I would observe particularly that the magnet school concept presently in place is truly exciting and innovative. I hope the public takes time to look at what is happening overall programmatically in our schools as well because that, too, is quite good. The Board and Superintendent Gary Jones are clearly on the right track, and, in closing these remarks, let me just add that the dismissal of this case does not end the requirement for the school system here always to provide the kind of equal education that is critical to the building of a viable adult population in this region. Dismissal of this case does, however, squarely place the full and complete responsibility on the Board and superintendent to continue the good work that

has been begun into the future on a permanent basis, hoping never again to require further assistance or supervision from the federal court. The school district's current motto, "Every Child, Every Day, Whatever it Takes," seems to me to embody the kind of ideal that must remain in place on a permanent basis, and it will be up to current and future boards and superintendents, always under the watchful eyes of the courts, to ensure that proper and equal education prevails.

Accordingly, after review of the record, testimony and evidence introduced on the hearing today, the Court being satisfied that the parties plaintiff herein interpose no objection to the relief sought, likewise with the Justice Department, that the Rapides Parish School Board is justly entitled to judgment herein declaring that the Rapides Parish School System has satisfactorily complied to the extent practicable, and in good faith, with all outstanding orders and injunctions herein, and that the testimony and evidence adduced on the hearing today satisfies the Court that the Rapides Parish School District is unlikely in the future to revert to its former ways or intentionally to discriminate based upon race or color in the future,

IT IS ORDERED, ADJUDGED, AND DECREED that the Rapides Parish School System is hereby declared unitary. All remaining outstanding injunctions and orders of the Court are hereby dissolved, and this Court's supervision over the

facets of the operations of the school system in this parish are hereby relinquished in full.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that control over all facets of the operations of the Rapides Parish School System are hereby restored to state and local control.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this suit is hereby DISMISSED WITH PREJUDICE.

JUDGMENT RENDERED in open court on September 28, 2006.

JUDGMENT SIGNED on this 3rd day of October, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge